SYENITE TRAP ROCK CO. v. WILLIAMS. (No. 7178.)

(Supreme Court, Appellate Division, First Department. May 7, 1915.)

1. CONTRACTS ⬳172—OPTION CONTRACTS—CONSTRUCTION.

A contract giving defendant an option to buy property after explicit provisions as to payment, which required the purchaser to make a small down payment and then to pay $10,000, provided that, if the purchaser should exercise the option and make the first large payment, the vendor would convey the property free from liens, but that if the purchaser failed he should pay $5,000. There were other provisions for reimburs-

⬳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

ing the vendor for expenses in the operation and maintenance of the plant up to the time the option should be exercised. *Held*, that the option contract required the purchaser to pay the $5,000 as a forfeit, regardless of whether he made the first large payment.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 758–761; Dec. Dig. &—172.]

2. VENDOR AND PURCHASER &—324—CONTRACTS—CONSTRUCTION.
  Where a vendor could and would have procured title, so that he could have conveyed the property free from incumbrances, the purchaser, who refused to perform on the ground of excessiveness of price, cannot defeat an action for the sum he agreed to forfeit in case of failure, on the ground that the vendor did not have title to all of the property.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 944–947; Dec. Dig. &—324.]

3. VENDOR AND PURCHASER &—324—CONTRACTS—CONSTRUCTION.
  Where a prospective purchaser of a quarry admitted that by his failure to consummate the transaction he was liable for a forfeit, the vendor's subsequent removal of some of the machinery is no defense.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 944–947; Dec. Dig. &—324.]

4. REFORMATION OF INSTRUMENTS &—19—RIGHT TO REFORMATION.
  A contract will not be reformed on account of a mistake of one of the parties.

[Ed. Note.—For other cases, see Reformation of Instruments, Cent. Dig. §§ 74–78; Dec. Dig. &—19.]

5. TRIAL &—5—CAUSES FOR SPECIAL DOCKETS—EQUITABLE DEMANDS.
  Where defendant, sued for breach of contract, asserted an equitable counterclaim for its reformation, he is bound to move for its trial at Special Term, and cannot demand the submission of the issues thereon to the jury at Trial Term.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 11, 12; Dec. Dig. &—5.]

6. CONTRACTS &—328—DEFENSE—NECESSITY OF REFORMATION.
  Where defendant did not seek reformation, he cannot defeat recovery on a contract on account of mutual mistake in some of its provisions.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1571–1584; Dec. Dig. &—328.]

Appeal from Trial Term, New York County.

Action by the Syenite Trap Rock Company against John J. Williams. From a judgment on directed verdict, and order denying new trial, defendant appeals. Affirmed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, DOWLING, and HOTCHKISS, JJ.

William P. Maloney, of New York City, for appellant.

Harmon S. Graves, of New York City, for respondent.

LAUGHLIN, J. The action is based on a contract in writing made between the parties on the 5th day of June, 1912, to recover the sum of $5,000, specified therein as "liquidated and agreed damages," to be paid to the plaintiff by the defendant in the event that he should fail to make the payments therein specified and enter into a contract for the purchase of the property therein described on or before the 1st day of August, 1912.

&—For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

[1] The contract recites that the plaintiff was operating and maintaining a stone-crushing plant, including buildings and other improvements and machinery and apparatus, on a tract of land consisting of about 250 acres at Little Falls, N. Y., and it gave the defendant an option to purchase the property, including the good will of its business and its contracts for the sale of crushed stone, until and including the 1st day of August, 1912, for the sum of $250,000, and in addition thereto the sum of $2,000, which it is recited was "to cover all expenses for operation and maintenance of said plant up to April 26, 1912," and an additional sum equal to the amount expended by the plaintiff in operating and maintaining its quarry and conducting its business from the last-mentioned date to the time the option should be exercised and the purchase completed, less "all benefits received" by the plaintiff "in cash or otherwise, by reason of such expenditures"; the amount of which, in the event that the purchase was consummated, was to be determined by an accounting.

The agreement recites that on the 26th day of April, 1912, the plaintiff had given the defendant an option to purchase the same property, which had expired without having been exercised, and that the defendant had thereby forfeited a payment of $500. The consideration recited in the agreement in question was $500, which was paid when it was signed, and the defendant agreed to pay $500 on the 1st day of July, 1912, and $10,000 on the 1st day of August, the date when the option expired; and it was mutually agreed that the down payment of $500 and the $10,000 to be paid on August 1st should be credited on the purchase price of the property, but that the $500 to be paid on July 1st should not be so credited, but should be deemed a separate and independent consideration for the execution of the agreement. The remaining payments were required to be made on or before the 5th day of September, 1912, after the rendition to the defendant of accounts of said expenditures on the 1st day of July, August, and September, respectively; but it was provided that, if said expenditures for the period from September 1st to September 5th should not be determined on September 5th, then those expenditures should be paid when an account thereof should be rendered to the defendant. The agreement then provides that if the defendant or his assigns should exercise the option by paying or causing to be paid to the plaintiff, on or before August 1, 1912, the said sum of $10,000 on account of the purchase price, the plaintiff would enter into a contract of sale with the defendant or his assigns, wherein and whereby it would agree, in consideration of the payment of the balance of the purchase price on or before September 5, 1912, to convey or cause to be conveyed, transferred, and assigned to him or to his assigns, or to such corporation as he may nominate, the said property free and clear of any incumbrance. Then, follows a paragraph in and by which the defendant agreed to use his best efforts to complete the purchase as soon as possible after the execution of the agreement, and providing that in case he should fail to make all the payments, and to enter into a contract for the purchase of the property, it was mutually agreed that he should pay the $5,000. It was further mutually agreed that the plaintiff should maintain, operate, and conduct its business during the period

covered by the agreement, as if a sale of the property was not contemplated, "and do so in every reasonable way to the full extent of its ability and means."

The appellant's theory of the construction of the contract is that he was only to pay the $5,000 as liquidated damages for his failure to perform the contract of purchase, which was to be made after he paid the $10,000. The contract to purchase was not made, for the reason that defendant failed to pay the $10,000, and refused to pay it and to enter into the contract of purchase. The theory of the plaintiff is that the defendant was to have the option to make the payment of the $10,000 and to enter into the contract, or to pay the $5,000 as liquidated damages to the plaintiff for maintaining its plant in accordance with the agreement and affording the defendant the privilege of exercising the option during the period covered by it. That is the theory upon which the verdict was directed; and we are of opinion that it is the true construction of the contract. That the construction contended for by the appellant was not the intention of the parties is further evidenced by two written extensions of the option, each of which recites that it was understood and agreed that the extension should not release the defendant from his liability under the contract to pay the sum of $5,000 as liquidated damages for a breach of the contract. The contract is inartificially drawn, but it is perfectly plain that what the parties intended as the breach of the contract was the election of the defendant not to consummate it by making the payment of the $10,000 at the expiration of the option and enter into a contract for the purchase of the property. The circumstances disclosed afforded a sufficient basis for the agreement liquidating the damages that would be sustained by the plaintiff by holding the property and operating the plant pending determination by defendant with respect to exercising the option.

[2] It is further contended in behalf of the appellant that the plaintiff did not have title to all of the property and was unable to perform for that reason, and for the further reason that it had permitted some of the machinery to be removed. It appears that it was understood at the time the option was given that the plaintiff did not have the record title to part of the premises, but that it was in a position to obtain it without delay. The evidence also tends to show that it did have title at the time of the expiration of the option; but whether it did or did not, the defendant did not refuse to complete the purchase on that ground, but on the ground that the purchase price was excessive, and, if he had been willing to purchase, it is manifest that the plaintiff could have given title in accordance with the contract.

[3] The defendant testified that he complained that some of the machinery had been removed; but it was not shown that that was so, and it appears that after the expiration of the option he admitted liability and promised to pay the $5,000. In a letter written on October 7, 1912, when he was negotiating for a further extension or new agreement with the plaintiff, he stated that, in the event that he should be unable to make a satisfactory new agreement for the purchase of the property on or before the 21st of that month, "I shall then expect

to be held liable for the forfeiture provided for in my original contract with the Syenite Trap Rock Company;" and in one written December 6, 1912, he referred to the $5,000 as a forfeiture then due from him to plaintiff.

[4] The defendant undertook to plead a counterclaim for the reformation of the contract; but the facts pleaded were insufficient to warrant its reformation, for neither fraud nor mutual mistake is sufficiently alleged. The defendant merely alleges that his understanding was that the liquidated damages clause was only to be effectual in case he exercised the option, and that, if it is capable of the interpretation claimed by the plaintiff, "the same was inserted by mistake of the parties, and at least a mistake on the part of this defendant."

[5] Moreover, the court at Trial Term was not obliged to try an equitable counterclaim for the reformation of the contract, or to submit any question of fact with respect thereto to a jury and then to reform the contract. The defendant's remedy under an equitable counterclaim was to move the trial thereof at Special Term before the trial of the issues arising on the complaint. Ward v. Union Trust Co. (App. Div., 1st Dept., March 12, 1915) 152 N. Y. Supp. 237.

[6] There is no force in the contention that the defendant could defend against the contract which it is conceded was made, on the theory of mutual mistake with respect to some of its provisions, without having it reformed. Ward v. Union Trust Co., supra.

It follows that the judgment and order should be affirmed, with costs. All concur.